```
UNITED STATES DISTRICT COURT                              NOT FOR PUBLICATION
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- X
GILBERT MCKENZIE,                                   :
                                                    :
                        Petitioner,                 :
                                                    :         **MEMORANDUM & ORDER**
         - against -                                :
                                                    :
PHILLIP HEATH, Superintendent,                      :         No. 10 CV 4407 (ERK)
                                                    :
                        Respondent.                 :
                                                    :
------------------------------------------------------- X
```

KORMAN, J.:

I assume familiarity with the underlying facts and circumstances of this case. Briefly, petitioner Gilbert McKenzie attempted to steal a package of razor blades from a convenience store by tucking them into his pants. The store's manager, Rodney Innis, detained McKenzie while awaiting the police. When Innis would not let McKenzie leave the store, McKenzie grabbed Innis by his necktie and choked him, and then used a knife he was carrying to stab Innis in the stomach, neck and heart. McKenzie was convicted by jury trial of murder and criminal possession of a weapon. McKenzie advances three arguments in support of his petition.

*I.     Jury Charge*

The jury initially returned a verdict finding McKenzie guilty of, *inter alia*, both murder in the second degree and manslaughter in the first degree. Upon reading the verdict sheet, the trial judge reminded the jury that he had directed them to consider the charges in the alternative, repeated the jury instructions on both the murder and manslaughter charges, and sent the jury back to deliberate further. At some point thereafter, the jury foreperson announced that the jury had found the petitioner guilty of murder and criminal possession. Nevertheless, when the members of the jury were polled as to whether that was their verdict, Juror Eleven answered,

"No." The trial judge told the jury to continue deliberating, and that they should send a note requesting further clarification of the charges if such assistance was required.

After the jury exited the courtroom, defense counsel made a motion for mistrial on the ground that the other jurors had pressured Juror Eleven into agreeing with the verdict. The trial judge denied the motion, noting that the jurors may still have been confused between the murder and manslaughter charges, and observing that Juror Eleven did not indicate that she felt undue pressure.

During the next day of deliberations, the jury sent a note inquiring what the outcome would be if the jury reached a stalemate. The trial judge brought the jury into the courtroom and told them, in part,

> apparently, there's some differences among you, but you will recall in my charge I indicated that with cooperation differences can be resolved. It's your obligation, as jurors, to calm[ly], patiently and intelligently review the evidence and discuss the case with each other in an honest effort to agree.
>
> ***
>
> If, [indeed], you have any question regarding the law in this case, I will be pleased to review them with you, if you send out a note. If there's any evidence you are interested in hearing again, we can have a read back.
>
> You should make every effort to harmonize the various views expressed by the different jurors and try to come [to] a unanimous verdict, if you can could [do] so without violating your own conscience.

Tr. at 377-78, ECF No. 6-7.

McKenzie argues that this supplemental instruction "singled out [Juror Eleven] in an effort to have her change her vote" "in clear violation of *Allen v. United States*, 164 U.S. 492 [(1896)]." Pet. Mem. at 6, ECF No. 7. Specifically, McKenzie characterizes the trial judge's use of the pronoun "you" to refer solely to Juror Eleven, rather than to the jury as a whole. *Id*. On direct appeal, the Appellate Division rejected this argument on the merits, and alternatively held

2

that the argument was not preserved for appellate review because McKenzie did not object at trial. *People v. McKenzie*, 48 A.D.3d 594, 594-95 (N.Y. App. Div. 2008). In addressing the merits, the Appellate Division held that

> the charge was balanced and neutral in tone and directed at the jurors in general. Additionally, the instructions did not urge that a dissenting juror abandon his or her own conviction, attempt to coerce or compel the jury to reach a particular verdict, or shame the jury into reaching a verdict. Contrary to the defendant's contention, the trial court's instructions to the jurors to 'be open to reason,' 'not to hesitate to change [their] views,' and to 'harmonize' their opinions, which were also given during the main charge, were balanced by the court's admonition that the jurors should only agree if they could do so 'without violating [their] own conscience' and should not 'change their opinion simply for the purpose of returning a verdict.'"
>
> Moreover, because the jury continued to deliberate and sent out two subsequent notes requesting a read back of testimony and other evidence, [a]ny alleged coercion in the charge did not result in a precipitous jury verdict.

*Id.* at 595 (quotation marks and citations omitted).

First, there is no evidence in the record to suggest that the trial judge improperly directed his instructions to any particular juror. Indeed, it is clear from the transcript of the proceedings that the instructions were directed to the jury as a whole. Second, the charge given was a substantially modified version of the charge in *Allen*. The charge there essentially told the jury "that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself." *Allen*, 164 U.S. at 501. Unlike the charge in *Allen*, which strongly suggested to a dissenting juror to vote with the majority to convict, the trial judge's instructions in the instant case contained no such language. Thus, the Appellate Division's conclusion that the jury charge in this case was "not improper," *McKenzie*, 48 A.D.3d at 595, does not constitute an unreasonable application of *Allen*.

3

## II. *Prosecutorial Misconduct*

McKenzie argues that there were two instances of prosecutorial misconduct during his trial. First, McKenzie argues that the prosecutor's use of "the words 'lie', 'liar', and 'unreliable and untruthful'" when referring to him in summation "was a blatant imposition of the prosecutor's beliefs as to the evidence and [McKenzie's] character, which violated [McKenzie's] constitutional rights to a fair trial." Pet. Mem. at 13. Specifically, McKenzie points to the prosecutor's following comments:

> First of all, he's unreliable and untruthful because he says to you on the videotape, "I didn't take anything" . . . but you saw that he's untruthful because on that videotape he did take those razor blades, put them in the back of his pants, and covered it with his shirt and walked around the store, then fixed the bulge.
>
> ***
>
> So when he tells you on the videotape, "I didn't take anything", he's lying.

Tr. at 309, ECF No. 6-6.

> So Mr. McKenzie is untruthful and unreliable because he has a motive to lie; a motive to minimize his own conduct and own responsibility; a motive to maximize at least in his mind, how bad a guy Mr. Innis is. He had the time to cook up the story [in the four hours before] the police got there, but you know it's unreliable because of all the witnesses.

Tr. at 310.

> What happened here? We have a man who clearly has demonstrably on the videotape and the other statements lied, demonstrably lied; whose statements are unreliable, because he has a motive to lie. He has a motive to minimize such that you can't rely on his version of what happened.
>
> And then you have witnesses without a demonstrable reason to lie, including the civilian who doesn't even work there who says Mr. Innis was never aggressive toward [McKenzie]; never, never, never aggressive.

Tr. at 316.

4

In its decision on McKenzie's § 440.10 petition, the New York Supreme Court rejected this argument on the merits and held that "the prosecutor's comments were within the broad bounds of rhetorical comment allowed on summation and were fair response to defense counsel's comments." Sup. Ct. Dec. & Order (April 6, 2010) at 3, ECF No. 6-2. After reviewing the record, I agree with the New York Supreme Court's conclusion. Moreover, even if the prosecutor's comments were inappropriate, they did not result in substantial prejudice to McKenzie in light of defense counsel's summation and the evidence adduced at trial.

Second, McKenzie argues that the prosecutor "turned over an incomplete video to the defense" and that if "the entire video [had] been turned over to the defense, it would have shown that [McKenzie] had been defending himself after having been attacked." Pet. Mem. at 13. In its decision on McKenzie's § 440.10 petition, the New York Supreme Court rejected this argument on the merits and held that "[McKenzie] has utterly failed to show that any further part of this incident was videotaped or that the videotape provided to the defense and entered into evidence was not the complete recording," and that this "allegation [was] made solely by [McKenzie] and unsupported by any other evidence, with no reasonably possibility that it is true." Sup. Ct. Dec. & Order at 3. Moreover, the Supreme Court observed that

> during the course of the trial, defense counsel cross-examined each witness with knowledge of the recording about whether the tape played in court was the entirety of what was recorded, and each witness, including the person who actually recorded the tape, confirmed that the videotape was complete and accurate.

*Id*. at 2. Here, McKenzie has again failed to offer any evidence to support this allegation. Thus, the New York Supreme Court's conclusion was not an unreasonable application of *Brady v. Maryland*, 373 U.S. 83 (1963).

### III. *Ineffective Assistance of Counsel*

McKenzie argues that his trial counsel committed two errors during the course of the trial. First, McKenzie argues that his trial counsel "fail[ed] to object to the trial court's *Allen*-type charge when the jury subsequently became deadlocked[.]" Pet. Mem. at 8. On direct appeal, the Appellate Division rejected this argument, holding that "[b]ecause the *Allen* charge was not improper, the defendant's ineffective assistance of counsel claim, based . . . on his attorney's failure to object to the charge, is without merit." *McKenzie*, 48 A.D.3d at 595 (citation omitted). For the reasons discussed above, I agree.

Second, McKenzie argues that his "trial counsel never moved to obtain a complete copy of the videotape of the incident." Pet. Mem. at 9. In its decision on McKenzie's § 440.10 petition, the New York Supreme Court rejected this argument on the merits, and alternatively held that McKenzie's claim of ineffective assistance of counsel on this ground was procedurally barred. Specifically, it observed "that defense counsel did, in fact, make a motion to inspect" the videotape at issue. Sup. Ct. Dec. & Order at 1. Moreover, for the reasons discussed above, McKenzie's claim regarding the videotape is without any evidentiary support in the record. Thus, the Supreme Court's conclusion was not an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).

The petition is **DENIED**. I decline to issue a certificate of appealability.

SO ORDERED.

Brooklyn, New York
July 9, 2013

/s/
Edward R. Korman
Senior United States District Judge